# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

**Jesse P. SULLIVAN**
**Machinery Technician Third Class (E-4), U.S. Coast Guard**

**CGCMSP 24923**
**Docket No. 1414**

**13 July 2016**

Special Court-Martial convened by Commander, Coast Guard Sector Buffalo.  Tried at Cleveland, Ohio, on 21 October 2014.

| | |
|---|---|
| Military Judge: | CDR Patrick M. Flynn, USCG |
| Trial Counsel: | LT Michael O. Walker, USCGR |
| Assistant Trial Counsel: | LCDR Kismet. R. Wunder, USCG |
| Defense Counsel: | LCDR Angela J. Tang, JAGC, USN |
| Appellate Defense Counsel: | LT Philip A. Jones, USCGR |
| Appellate Government Counsel: | LT Daniel Velez, USCGR |

**BEFORE**
**McCLELLAND, KOVAC & JUDGE**
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by special court-martial, military judge alone.  Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of violation of a lawful general order and one specification of dereliction of duty, in violation of Article 92, Uniform Code of Military Justice (UCMJ); one specification of cruelty and maltreatment of a subordinate, in violation of Article 93, UCMJ; and two specifications of requesting a person to engage in sexual acts or sexual contact for money, in violation of Article 134, UCMJ.  The military judge sentenced Appellant to confinement for four months, reduction to E-1, and a bad-conduct discharge.  The Convening Authority approved the sentence, except for confinement in excess of three months, in accordance with the pretrial agreement.

Before this Court, Appellant has assigned as error that Appellant's conviction of maltreatment and also of several specifications of misconduct that constitute part of the maltreatment specification is an unreasonable multiplication of charges.

In addition, the Government raises the question of whether it is legally possible for Appellant to have violated Article 93 in the circumstances of this case, given that Article 93 requires cruelty toward a person subject to the accused's orders.

We discuss both issues, set aside the conviction of Article 93, and affirm the sentence.

Appellant was convicted of (1) violating a lawful general order prohibiting use of government office equipment or services to intentionally and knowingly view, download, store, display, **transmit**, or copy any materials that are sexually explicit, or are predominantly sexually oriented, by wrongfully sending and seeking receipt of sexually explicit or sexually oriented materials through Coast Guard software on the Coast Guard computer network, on diverse occasions between 3 October 2013 and November 2013 (Charge I); (2) cruelty toward Seaman SP by demanding that she take nude or semi-nude photos or videos of herself while she was on duty, by threatening her career in exchange for sexual favors, and by making repeated offensive comments of a sexual nature to her, on diverse occasions from November 2013 through February 2014 (Charge II); and requesting Seaman SP to engage in sexual contact and sexual acts for monetary compensation on 10 July 2013 and 5 November 2013 (Charge VI).[1]

Before announcing sentence, the military judge stated, "I considered the conduct encompassed by Charge I, Charge II, and both specifications of Charge VI to be part of a continuous course of conduct, the gravamen of which was the accused's maltreatment of [Seaman SP] by continuing to ask her for nude pictures and sexual favors, things of that nature." (R. at 166.)

Appellant contends that these convictions constitute an unreasonable multiplication of charges that exaggerates his criminality. He invokes *United States v. Quiroz*, 55 M.J. 334, 338-

---

[1] He was also convicted of dereliction of duty by submitting an inaccurate travel claim.

339 (C.A.A.F. 2001). He acknowledges that he did not raise an objection at trial, one of the factors to be considered according to *Quiroz*. However, he claims support in *Quiroz*'s other four factors. Notably, he claims that each charge and specification was not aimed at distinct criminal acts. We disagree. Appellant's use of the government computer network to send and solicit sexually oriented materials is completely different from cruelty to a subordinate and also significantly different from requesting sexual contact and sexual acts for money, even though in this case many of the facts encompassing the offenses were the same. The fact that a course of conduct encompasses several distinct criminal acts does not make it inappropriate or unreasonable to specify each of the criminal acts.

Moreover, although there is nominal overlap of dates among the specifications in that November 2013 is mentioned in three of them, the dates set forth in the stipulation of fact (Prosecution Ex. 1) overlap on only one out of eight dates. On that date, 5 November 2013, it is stipulated that Appellant violated Article 92 and Article 134, but not Article 93. Appellant's testimony in the providence inquiry allows for somewhat more possible overlap, but clearly, there were separate dates of criminal conduct supporting each of the specifications rather than extensive overlap, as implied by Appellant's assertion of "classic unreasonable multiplication of charges by creative drafting." (Assignment of Errors and Brief at 7.)[2]

We turn to the Government's question about Article 93. Appellant and his female victim, Seaman SP, met online. They learned that each other was a member of the Coast Guard, stationed at a different unit. Appellant was a third class petty officer (E-4), Seaman SP a "nonrate" (E-3). Although he was of a higher paygrade, Appellant was not a supervisor of Seaman SP in any sense.

---

[2] The examples of unreasonable creative drafting found in *United States v. Morrison*, 41 M.J. 482, 484 n. 3 (C.A.A.F. 1995), cited by Appellant: (1) theft of currency and theft of ATM card; (2) a single sale of stock involving three mailings charged as three separate offenses; (3) possession of two packages of cocaine at the same time and place. By contrast, in *United States v. Pauling*, 60 M.J. 91 (C.A.A.F. 2004), cited by Appellant because it quotes *Morrison*'s "unreasonable multiplication of charges by creative drafting" language, the charging of separate specifications for forgery of the signature of the drawer of a check and the signature of the endorser of the same check was held not to be unreasonable multiplication of charges by creative drafting, but "appropriately charging Appellant's overly-creative criminal activity." *Id.* at 96.

Article 93 provides:

Any person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct.

The Manual for Courts-Martial, United States (2012 ed.), Pt. IV, ¶ 17.c.(1) provides:

"Any person subject to his orders" means not only those persons under the direct or immediate command of the accused but extends to all persons, subject to the code or not, who by reason of some duty are required to obey the lawful orders of the accused, regardless whether the accused is in the direct chain of command over the person.

The Government suggests that Charge II and its specification, alleging that Appellant was cruel toward Seaman SP, might be legally insufficient[3], or that the guilty plea thereto was improvident. The Government accordingly requests, in essence, that we dismiss Charge II and its specification. The Government further requests that we affirm the sentence.

Appellant's conduct, as revealed in the stipulation of fact and the providence inquiry, supports a finding that he was cruel toward Seaman SP, as alleged. The question is whether there is "some duty" requiring a seaman to obey lawful orders of a petty officer stationed at a different unit, outside of any official or professional context. We have found no case providing definitive guidance on the question. In *United States v. Curry*, 28 M.J. 419, 424 (C.M.A. 1989), the court questioned whether a first class petty officer (E-6) could properly be convicted of oppressing a petty officer (E-4, E-5, or E-6) who "had no duty which required her to obey any orders of" the first class petty officer. The Court refrained from ruling on the question, instead remanding the case. *Id.*

It is possible that there is a Coast Guard directive or policy that would have imposed a duty upon Seaman SP to obey lawful orders of Appellant. However, there are no facts provided in the record suggesting that there was any basis requiring Seaman SP to obey Appellant's orders. Accordingly, there is insufficient factual basis to conclude that Seaman SP was subject

---

[3] We see no insufficiency in the specification.

to Appellant's orders, and thus insufficient factual basis to support the guilty plea. Furthermore, it may be questioned whether Appellant, who admitted that Seaman SP was subject to his orders, did so with a sufficient understanding of the meaning of that phrase, further undermining providence of the guilty plea.

Noting the Government's position conceding the issue, we will set aside the conviction of Charge II and its specification. Referring to the military judge's statement concerning the "continuous course of conduct," Appellant appears to concede that the military judge would not have adjudged a lesser sentence in the absence of Charge II. We agree. Hence no sentence relief is warranted.

We note that the Convening Authority's action purports to execute the adjudged bad-conduct discharge. This, of course, was premature. *See* Article 71(c)(1), UCMJ; Rule for Courts-Martial 1113(c), Manual for Courts-Martial, United States (2012 ed.) (MCM); Appendix 16 Forms 11 & 12, MCM. [4] We disregard this feckless act, but we encourage staff judge advocates to guard against such mistakes.

### Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings of guilty of Charge II and its specification are set aside, and Charge II and its specification are dismissed. The remaining findings and the sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges KOVAC and JUDGE concur.



For the Court,

Sarah P. Valdes
Clerk of the Court

---

[4] The action is also irregular in other respects. Divergence from Appendix 16 forms should be ventured only with great caution.