CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist BRANDON B. WARD**
**United States Army, Appellant**

ARMY 20120681

Headquarters, 25th Infantry Division
David L. Conn, Military Judge
Colonel George R. Smawley, Staff Judge Advocate

For Appellant:  Colonel Kevin Boyle, JA; Major Amy E. Nieman, JA; Captain Robert N. Michaels, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Benjamin W. Hogan, JA (on brief).

24 July 2014

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TELLITOCCI, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of possession of child pornography and two specifications of viewing child pornography, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2006) [hereinafter UCMJ].  The convening authority approved the adjudged sentence of a bad-conduct discharge, eighteen months of confinement, and reduction to E-1.

This case is before this court for review pursuant to Article 66, UCMJ. Appellant alleges that his conviction for the four separate specifications constitute an unreasonable multiplication of charges.  We agree and grant relief for an

unreasonable multiplication of charges in our decretal paragraph. Appellant raises an additional matter which merits discussion but no relief.[1]

## BACKGROUND

Appellant was charged with and pleaded guilty to the following Article 134, UCMJ, specifications:

> SPECIFICATION 1: In that [appellant], U.S. Army, did, at or near Schofield Barracks, Hawaii, between on or about 10 April 2008 and on or about 1 June 2010, knowingly and wrongfully *possess* child pornography, to wit: videos and digital images of a minor engaging in sexually explicit conduct, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

> SPECIFICATION 2: In that [appellant], U.S. Army, did, at or near Schofield Barracks, Hawaii, between on or about 10 April 2008 and on or about 1 June 2010, knowingly and wrongfully *view* child pornography, to wit: videos and digital images of a minor engaging in sexually explicit conduct, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

> SPECIFICATION 3: In that [appellant], U.S. Army, did, at or near Forward Operating Base Warhorse, Iraq, between on or about 1 June 2010 and on or about 1 July 2011, knowingly and wrongfully *possess* child pornography, to wit: videos and digital images of a minor engaging in sexually explicit conduct, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

> SPECIFICATION 4: In that [appellant], U.S. Army, did, at or near Forward Operating Base Warhorse, Iraq, between on or about 1 June 2010 and on or about 1 July 2011, knowingly and wrongfully *view* child pornography, to wit:

---

[1] Appellant also personally raises two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), neither of which merits discussion or relief.

videos and digital images of a minor engaging in sexually explicit conduct, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

At trial, the government conceded the pairs of "possessing" and "viewing" specifications "would be . . . unitary offense[s] for sentencing purposes." The military judge announced that he would consider Specifications 1 and 2 and Specifications 3 and 4 as only two offenses for purposes of sentencing. Neither party objected to the court's ruling. The defense never made a motion for unreasonable multiplication of charges for findings.

Appellant and his defense counsel, Captain (CPT) GS, filled out and signed a standard Defense Counsel Assistance Program (DCAP) Post-Trial and Appellate Rights form (PTAR). The PTAR was dated the day of trial, 11 July 2012, and included guidance that appellant, if convicted and subject to resultant forfeitures, could request a deferment and/or waiver of those forfeitures from the convening authority. Appellant indicated on the PTAR that if subject to forfeitures, he wanted to request a deferment and waiver of those forfeitures. Appellant also indicated in the PTAR that if counsel was unable to contact appellant after reasonable efforts, defense counsel was authorized to submit matters on appellant's behalf. This PTAR provision was reinforced by the military judge on the record just prior to closing for deliberation by the following:

> Military Judge: If your defense counsel tries to contact you, but is unsuccessful, do you authorize him to submit clemency matters on your behalf to the Convening Authority that he deems appropriate?
>
> [Appellant]: Yes, sir.

Although the military judge did not include forfeitures as part of appellant's adjudged sentence, appellant was subject to automatic forfeiture of all pay and allowances. *See* UCMJ art.[2] 58b. On 20 July 2012, CPT GS submitted a request to defer the adjudged reduction and defer and waive the automatic forfeitures for the benefit of appellant's spouse and minor children, with each child identified by name and age. On 2 August 2012, appellant's request was disapproved by the convening authority.

Captain GS submitted clemency matters to the convening authority in accordance with Rules for Courts-Martial [hereinafter R.C.M.] 1105 and 1106.

---

[2] Corrected

3

Captain GS's memorandum requested the convening authority disapprove the findings or, in the alternative, disapprove or reduce the sentence to confinement. The submission pursuant to R.C.M. 1105 and 1106 contained letters from appellant's spouse and mother as well as numerous photographs of appellant's family.

On appeal to this court, appellant submitted an affidavit in which he avers that he was unable to contact CPT GS post trial, despite numerous attempts. Appellant also averred that, although he had previously informed CPT GS that he did not wish to submit a personally drafted letter as part of his clemency submissions, he had changed his mind and wished to do so. His affidavit further states that had he been able to submit a letter, it would have comported with the following:

> I would have told the convening authority about the impact my conviction and incarceration was having on my family. Considering the convening authority disapproved sending my pay to my family even after the military judge made that recommendation,[3] I thought it might help him understand why I was asking for the things I was asking for. At the very least, I thought it might help him reconsider sending money to my family.

Appellant has not submitted any such letter.

Upon an order from this court, the government obtained and submitted an affidavit from CPT GS. In this affidavit, CPT GS averred that despite multiple attempts by CPT GS and his paralegal to contact appellant, they were unsuccessful. The affidavit also states that, both prior to and during trial, despite repeated requests from counsel, appellant was unwilling to provide a letter in support of either the request for deferment and waiver or in support of his post-trial clemency submissions. Finally, CPT GS avers that he assumed that appellant, consistent with his prior repeated declinations, would refuse to submit a letter on his own behalf.

## LAW AND DISCUSSION

### Unreasonable Multiplication of Charges

We review issues of unreasonable multiplication of charges for an abuse of discretion. *United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004). Although appellant failed to raise the issue at trial, the issue was not expressly waived and we

---

[3] The military judge's recommendation regarding deferral and waiver was appropriately and specifically discussed by the staff judge advocate in his recommendation to the convening authority.

4

review using the plain error standard. *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). The appellant must demonstrate that: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the appellant. *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008).

During the appellant's providence inquiry, he stated the files which were the subject of Specifications 1 and 2 were identical sets. Later, appellant stated that the files involved in Specifications 3 and 4 were the same set, but a different set of files than the set in Specifications 1 and 2.[4]

Thus, the offenses are necessarily intertwined. "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." R.C.M. 307(c)(4). We consider five factors to determine whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase [the] appellant's punitive exposure?; and
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (internal citation and quotation marks omitted) (internal alteration reflects the holding by CAAF in *Quiroz* that "unreasonably" was the appropriate legal standard).

---

[4] The misconduct charged in this case took place prior to the 12 January 2012 effective date of Executive Order No. 13593 in which the President enumerated the specific Article 134, UCMJ, offense of Child Pornography. *See* Exec. Order No. 13593, 3 C.F.R. 295 (2011) (*2011 Amendments to the Manual for Courts-Martial, United States*). In this newly enumerated offense, viewing and possessing are alternative theories of liability for the first element. This is similar to the structure of the offense set forth under 18 U.S.C. § 2252 (a)(4)(B) (2006 & Sup. II 2009) which prohibits possession or knowingly accessing child pornography with intent to view.

Under the facts of this case, the accused's possession and viewing of an identical set of images and videos are necessarily and closely interrelated and not aimed at distinctly separate criminal acts. Absent possession, the viewing could not have taken place. Put another way, the viewing here was incidental to the possession. Four convictions unreasonably exaggerate appellant's criminality for only two instances of criminal behavior. Thus, these two *Quiroz* factors balance in favor of appellant, requiring that we merge these four specifications into two specifications respectively. *See United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (noting one or more factors may be sufficiently compelling, without more, to warrant relief). Accordingly, we will merge Specifications 1 and 2 into Specification 1, and we will merge Specifications 3 and 4 into renumbered Specification 2 in our decretal paragraph.

Post Trial Ineffective Assistance of Counsel

In his second assignment of error, appellant alleges appellant's trial defense counsel, CPT GS, was ineffective by not consulting with appellant regarding clemency matters.

In evaluating allegations of ineffective assistance of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard requires appellant to demonstrate: (1) that counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *Id*. Under the first part of this test, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The relevant issue is whether counsel's conduct failed to meet an objective standard of reasonableness or whether it was outside the "wide range of professionally competent assistance." *Id*. at 690. "On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306-307 (C.A.A.F. 2001) (citing *Strickland*, 466 U.S. at 689). The second part of this test is met by showing a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see generally United States v. Hood*, 47 M.J. 95 (C.A.A.F. 1997) (applying *Strickland* to address claim of ineffective assistance of counsel during the post-trial stage of appellant's case); *United States v. Clemente*, 51 M.J. 547 (Army Ct. Crim. App. 1999). "However, because of the highly discretionary nature of the convening authority's clemency power, the threshold for showing prejudice is low. This Court will give an appellant the benefit of the doubt and find that there is material prejudice to the substantial rights of an appellant if there is an error and the appellant makes some colorable showing of possible

prejudice." *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999) (citing *United States v. Wheelus*, 49 M.J. 283, 289 (C.M.A. 1998))[5] (quotation marks omitted).

This is not a case in which counsel failed to submit any post-trial matters, nor does appellant complain regarding the adequacy of his counsel's submissions. Here, appellant only avers that had he been able to contact his counsel he would have submitted a personal letter. Pursuant to *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we have analyzed whether a post-trial evidentiary hearing is required. After applying the second and third *Ginn* principles, we find such a hearing is not required in this case. *Id.* at 248.

Considering the second *Ginn* factor, appellant's affidavit sets forth merely general, speculative, and conclusory observations. Appellant has offered no specific evidence which would support a convening authority approving a previously denied request for deferment or waiver of forfeitures nor has he alleged any facts different than those set forth in counsel's R.C.M. 1105 and 1106 submission. The clemency submission, including the letters from appellant's wife and mother, certainly reflects the impact of appellant's confinement on his family. *See Clemente*, 51 M.J. at 551 (an appellant has the responsibility to bring to an appellate court's attention facts rather than mere speculation as relief cannot be granted, under *Strickland*, based on mere speculation).

Appellant did not proffer to his trial defense counsel, his appellate defense counsel, or to this court any materials he may have wished to submit to the convening authority. Appellant also specifically authorized his trial defense counsel, both in the PTAR and in open court, to submit matters on his behalf if reasonable attempts to contact appellant failed. The affidavit from CPT GS demonstrates reasonable efforts to make post-trial contact.

Furthermore, under the third *Ginn* factor, assuming appellant's affidavit facially sets forth sufficient facts to state a claim of legal error, the government affidavit does not contradict any of the facts set forth in appellant's. This is not a case in which there are conflicting affidavits. In fact, the affidavits here are complementary. Appellant and his trial defense counsel each aver that prior to and during trial, appellant declined to submit a personal letter in support of his clemency submissions. Each affidavit provides that, despite multiple attempts by each party, there was no successful post-trial communication. The affidavit of CPT GS contains more detail regarding discussions with appellant, but nothing therein conflicts with

---

[5] Corrected

appellant's affidavit. Therefore, we may "proceed to decide the legal issue on the basis of those uncontroverted facts." *Ginn*, 47 M.J. at 248.[6]

Appellant did not proffer to his trial defense counsel, his appellate defense counsel, or to this court any materials he may have wished to submit to the convening authority. Appellant also specifically authorized his trial defense counsel, both in the PTAR and in open court, to submit matters on his behalf if reasonable attempts to contact appellant failed. The affidavit from CPT GS demonstrates reasonable efforts to make post-trial contact.[7]

Appellant has also failed to demonstrate that counsel's reasonable reliance on appellant's repeated unwillingness to provide a personal letter, under the circumstances of this case, constitutes deficient performance. *See Strickland*, 466 U.S.[8] at 687; *Ginn*, 47 M.J. at 248. As a result, appellant's claim of ineffectiveness is without merit.

## CONCLUSION

Specifications 1 and 2 of The Charge are consolidated into a single specification, Specification 1 of The Charge, to read as follows:

> SPECIFICATION 1: In that [appellant], U.S. Army, did, at or near Schofield Barracks, Hawaii, between on or about 10 April 2008 and on or about 1 June 2010, knowingly and wrongfully possess and view child pornography, to wit: videos and digital images of a minor engaging in sexually explicit conduct, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

The finding of guilty to Specification 2 is set aside and that specification is dismissed.

Specifications 3 and 4 of The Charge are consolidated into a single specification, renumbered Specification 2 of The Charge, to read as follows:

---

[6] Corrected

[7] Corrected

[8] Corrected

> SPECIFICATION 2: In that [appellant], U.S. Army, did, at or near Forward Operating Base Warhorse, Iraq, between on or about 1 June 2010 and on or about 1 July 2011, knowingly and wrongfully possess and view child pornography, to wit: videos and digital images of a minor engaging in sexually explicit conduct, such conduct being prejudicial to good order and discipline in the armed forces and being of a nature to bring discredit upon the armed forces.

The finding of guilty to Specification 4 is set aside and that specification is dismissed.

The findings of guilty as modified are AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence as these specifications were already merged for sentencing at trial. Second, appellant was tried and sentenced by a military judge. Third, we find the merged offenses still capture the gravamen of the original offenses and the aggravating circumstances surrounding appellant's conduct remains admissible and relevant to the remaining offenses. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, we AFFIRM the approved sentence. We find this purges the error in accordance with *Sales* and *Winckelmann*, and is also appropriate under Article 66(c), UCMJ. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

9